Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the alleged Class

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDO MUNOZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHOOLADVISOR, LLC d/b/a DEGREESEARCH.ORG, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:20-cv-00440<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>Hearing Date: January 8, 2021<br>Time: 10:00 a.m.<br>Courtroom: 10, 6th Floor<br>Judge: Hon. Erica P. Grosjean |

i

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................................... **iii**

**I.      INTRODUCTION** .................................................................................... **1**

**II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY** ................ **2**

**III.    ARGUMENT** .......................................................................................... **3**

   **A. Regardless of the Supreme Court's decision, discovery will still be needed regarding Defendant's dialing system** ..................... **4**

   **B. The requested stay also fails to meet the *Landis* factors** ................. **6**

      **1)  SchoolAdvisor's claimed "hardship" will occur regardless of whether the Court grants the motion to stay** ..................................................................................... **7**

      **2)  Absent a stay, Plaintiff will be irreparably damaged in the form of lost evidence** ................................................. **9**

      **3)  A stay would not promote judicial economy** .................... **11**

      **4)  Defendant's request to stay falls in line with the trend in TCPA litigation** ...................................................... **13**

**IV.    CONCLUSION** .................................................................................... **15**

## <u>TABLE OF AUTHORITIES</u>

*A.M. by & through Deora v. Bridgecrest Acceptance Corp.*,
    No. 4:20-CV-00553-SEP, 2020 WL 3489280 (E.D. Mo. June 26, 2020).... 13

*Abante Rooter and Plumbing, Inc. v. Nationwide Mut. Ins. Co.*,
    No. 17-cv-03328-EMC, 2018 WL 573576 (N.D. Cal. Jan. 26, 2018) ........... 5

*Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631,
    140 S. Ct. 2335 (July 6, 2020)...................................................................... 13

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
    490 F.3d 718 (9th Cir. 2007) ........................................................................ 10

*Camacho v. Hydroponics, Inc.*, No. EDCV20980JGBKKX,
    2020 WL 6784519 (C.D. Cal. Sept. 22, 2020) ............................................. 15

*Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWX),
    2015 WL 9272790 (C.D. Cal. Dec. 17, 2015)............................................... 14

*Goro v. Flowers Foods, Inc.*, No. 17-CV-2580 JLS (JLB),
    2020 WL 804841 (S.D. Cal. Feb. 18, 2020)................................................. 11

*Gusman v. Comcast Corp.*, No. 13CV1049-GPC DHB,
    2014 WL 2115472 (S.D. Cal. May 21, 2014) ............................................... 14

*Henderson v. United Student Aid Funds, Inc.*, No. 13-CV-1845,
    2016 WL 5956041 (S.D. Cal. May 3, 2016) ................................................. 12

*Knapper v. Cox Commc'ns, Inc.*, No. CV-17-00913-PHX-SPL,
    2019 WL 250430 (D. Ariz. Jan. 17, 2019) ................................................... 14

*Kristensen v. Credit One Bank, N.C.*, No. CV14-7963 DMG AJWX,
    2015 WL 2151751 (C.D. Cal. May 7, 2015) ................................................. 14

*Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL,
    2020 WL 4698646 (W.D. Wash. Aug. 13, 2020).............................. 8, 13, 15

*Landis v. North Am. Co.*, 299 U.S. 248 (1936)................................... 6, 13

iii

*Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO,

    2018 WL 6459964 (E.D. Cal. Dec. 10, 2018)................................................ 14

*LG Elecs., Inc. v. Eastman Kodak Co.*, No. 09-CV-0344H(BLM),

    2009 WL 1468703 (S.D. Cal. May 26, 2009) ............................................. 10

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) .............................. 7, 8, 10

*Mehaffey v. Navient Sols., LLC*, No. 19-CV-00197-REB-NRN,

    2020 WL 5260209 (D. Colo. Feb. 13, 2020)................................................ 13

*Pittenger v. First Nat'l Bank of Omaha*, No. 20-CV-10606,

    2020 WL 5596162, (E.D. Mich. Sept. 18, 2020) ........................................ 15

*Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM),

    2019 WL 4382204 (S.D.N.Y. Aug. 19, 2019................................................ 14

*Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062 (D. Nev. 2019) .......... 14

*Smith v. JPMorgan Chase Bank, N.A.*, No. 20CV01777CBMPJWX,

    2020 WL 5033532 (C.D. Cal. Aug. 21, 2020) ............................................ 15

*Weisbein v. Allergan, Inc.*, No. SA CV 20-0801 FMO (ADSx),

    2020 WL 6555051 (C.D. Cal. Nov. 6, 2020) .......................................... 8, 15

*Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR,

    dkt. 26 (D. Ariz. July 17, 2020)............................................................ 12, 15

**STATUTES, RULES, SECONDARY SOURCES**

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*............................ 1, 2

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY

# I.     INTRODUCTION

Defendant SchoolAdvisor, eager to avoid litigating this case challenging its serial violations of the Telephone Consumer Protection Act, 47 U.S.C.§ 227, *et seq.*, seeks a stay of this entire lawsuit pending the Supreme Court's resolution of *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020). The *Duguid* case concerns the definition of an automatic telephone dialing system ("ATDS" or "autodialer") and, specifically, whether a dialing system that does not use a random number generator may be classified as an ATDS. Defendant asserts that the Court should wait until the *Duguid* case is decided before this case may proceed any further.

Fortunately for the recipients of Defendant's harassing calls, SchoolAdvisor's arguments in support of a stay fail, and the Court should deny the Motion. First, SchoolAdvisor misreads *Duguid* and the impact it may have on these proceedings. While Defendant asserts that "the impact of *Facebook* on this litigation may be dispositive of the whole matter," (Def. Mot. at 8) the reality is that the true nature of Defendant's dialing equipment must be proven through discovery regardless of any decision the Supreme Court may reach regarding the definition of an ATDS. Rather than sit idly by for months while evidence becomes more distant and difficult to obtain, the parties should proceed with discovery that will be required irrespective of the *Duguid* decision.

Additionally, the *Landis* factors—which courts are to apply when faced with requests for stays—weigh against granting SchoolAdvisor's Motion. Plaintiff and the class members face a real risk of harm if discovery is stayed while SchoolAdvisor's supposed hardship depends on the Supreme Court disposing of Plaintiff's claim. Further, judicial economy will not be served by postponing discovery and forcing this matter to languish on the Court's docket—again,

1

discovery regarding the capacity of Defendant's dialing system is going to be necessary regardless of the outcome in *Duguid.*

As such, and as explained further below, Defendant's Motion to Stay should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2020, Plaintiff filed the instant case against Defendant alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act"). (Dkt. 1.) Specifically, Plaintiff alleges that SchoolAdvisor violated the TCPA by placing autodialed text messages to his cellphone and the cellular telephones of thousands of similarly situated consumers—all without prior express consent. (*Id.* ¶¶ 16, 33.) In support of his ATDS claim, Plaintiff alleges that Defendant utilized a dialing system that "has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion without human intervention." (*Id.* ¶¶ 12, 41.)

On June 25, 2020, the parties conferred and filed a joint report setting forth their positions on the discovery schedule. (Dkt. 15.) At the time, Defendant proposed bifurcating discovery to limit the first four months solely to merits-based discovery. (*Id.* at 5.) Defendant claimed, "if, as Defendant anticipates, initial merits discovery confirms that Plaintiff cannot beat summary judgment, it better positions the Parties to resolve the case in its early stages by avoiding motion practice all together." (*Id.* at 5-6.) On July 8, 2020, the Court issued its scheduling order agreeing with Defendant and bifurcating discovery into two phases. (Dkt. 17.) The first phase was limited to all discovery regarding Plaintiff, and written discovery regarding Defendant's policies and procedures, which ran until October 10, 2020.

2

(*Id.*) Thereafter, the second phase would commence, and the parties could engage in class and merits related discovery. (*Id.*)

On September 1, 2020, Defendant served its first set of discovery on Plaintiff, which included requests for production and interrogatories. (Declaration of Taylor T. Smith ("Smith Decl.") ¶ 4, a true and accurate copy of which is attached hereto as Exhibit A.) On October 7, 2020, Plaintiff served his responses to Defendant's first set of discovery, along with his responsive documents. (Smith Decl. ¶ 5.)

On October 19, 2020, Plaintiff served his first set of written discovery on Defendant, including requests for production and interrogatories. (*Id.* ¶ 6.) On November 20, 2020, counsel for SchoolAdvisor requested an additional 21 days to respond to Plaintiff's discovery requests—putting the response deadline at December 9, 2020. (*Id.* ¶ 7.) Plaintiff agreed to the requested extension. (*Id.*) On December 9, 2020—six days after the instant motion was filed—SchoolAdvisor served its "responses" to Plaintiff's first set of discovery. (*Id.* ¶ 8.) Rather than provide any substantive responses at all, SchoolAdvisor objected to each request as being supposedly improper given Defendant's pending motion to stay. (*Id.*) No substantive responses or responsive documents were or have been provided. (*Id.* ¶ 9.) SchoolAdvisor even refused to identify the third party who it claims obtained Plaintiff's consent to place the text messages. (*Id.* ¶ 10.) On December 22, 2020, the parties conferred and agreed that SchoolAdvisor would provide substantive discovery responses by December 30, 2020. (*Id.* ¶ 11.)

Given SchoolAdvisor's gamesmanship, and as explained further below, this Court should deny Defendant's motion to stay in its entirety.

## III.   ARGUMENT

SchoolAdvisor's request for a stay pending the Supreme Court's review of

3

*Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) should be denied. While the Supreme Court's decision could theoretically change the definition of an ATDS, the outcome will not be dispositive of Plaintiff's claim. Rather, discovery regarding Defendant's dialing system will still be necessary regardless of how the Supreme Court rules. Because a stay would only result in delaying inevitable discovery, the *Landis* factors weigh against a stay, which would undoubtedly prejudice Plaintiff's ability to obtain necessary evidence. As such, the Court should deny Defendant's motion to stay.

### A.    Regardless of the Supreme Court's decision, discovery will still be needed regarding Defendant's dialing system.

At the core of SchoolAdvisor's motion to stay is the mistaken assumption that the Supreme Court's upcoming decision in *Facebook* "implicates an issue central to Plaintiff's prima facie case." (Def. Mot. at 3.) While the decision may elucidate further what type of system qualifies as an ATDS, it will not eliminate the need for discovery regarding Defendant's dialing system in particular.[1]

At issue in *Duguid* is the definition of an ATDS. There, after the district court dismissed Duguid's complaint for failing to adequately plead an ATDS, the Ninth Circuit reversed and held that an ATDS could be found where the dialing technology is capable of storing numbers to be called and dialing such numbers automatically. *Duguid*, 926 F.3d at 1149–51. The Court rejected the notion that an ATDS must use a random or sequential number generator to store numbers. *Id.* On July 9, 2020, the Supreme Court granted certiorari for review of following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the

---

[1] To be sure, nowhere does Defendant indicate that if *Duguid* is decided against Facebook that it, SchoolAdvisor, automatically loses this lawsuit. Apparently, the looming *Duguid* decision will only be dispositive if Facebook prevails.

4

device does not 'us[e] a random or sequential number generator.' Petitioner's Brief in *Facebook, Inc. v. Duguid, et al.*, Case No. 19-511, 2019 WL 5390116, at *ii (S. Ct. Oct. 17, 2019). Hence, the Supreme Court will consider whether a dialer that does not use a "random or sequential number generator" may be considered an ATDS as defined by the statute.

While the *Duguid* decision could certainly impact the definition of an autodialer, it will not dispose of Plaintiff's claims or the need to demonstrate the use of an ATDS. Here, Plaintiff alleged that Defendant sent the text messages using an ATDS that featured "a random or sequential number generator." (Dkt. 1 at ¶¶ 12, 41.) Thus, on the one hand, if the Court reverses the Ninth Circuit's decision, evidence of a random number generator will be required. On the other hand, if the Supreme Court upholds the *Facebook* decision, Plaintiff will no longer need evidence of a random number generator to prove that Defendant's system qualifies as an ATDS, but he will still need to establish that the dialing system is capable of storing numbers to be called and dialing such numbers automatically. As such, regardless of the Supreme Court decision, the question of what constitutes an ATDS is a "highly fact-specific inquiry" better addressed with a "more developed factual record" after the plaintiff has "an opportunity to test the declaration[s] through discovery or deposition." *Abante Rooter and Plumbing, Inc. v. Nationwide Mut. Ins. Co.*, No. 17-cv-03328-EMC, 2018 WL 573576, at *2, n. 2 (N.D. Cal. Jan. 26, 2018).

Put simply, Plaintiff will need to obtain evidence through discovery to determine the nature of the dialer that was actually used to send the text messages at issue in this case, and such evidence will be necessary to this case no matter what the Supreme Court decides. There is simply no justification for delaying the discovery process.

5

As a final point, it's worth mentioning that this is the second time that SchoolAdvisor has asked this Court to limit discovery for a matter that it claims will simplify the issues. That is, SchoolAdvisor has already been given the benefit of bifurcated discovery by claiming previously that it would benefit all parties and bring about an early resolution. (*See* Dkt. 17.) Despite this, Defendant has not produced any discovery, let alone prior express consent applicable to Plaintiff. Nor has Defendant moved for summary judgment. Moreover, despite requesting and receiving a 21-day extension to respond to Plaintiff's discovery requests, Defendant initially claimed that it has no obligation to provide a response while its instant motion to stay is pending, which was filed forty-five days after Plaintiff served his discovery requests. (Smith Decl. ¶ 8.) Enough is enough: the Court should put an end to Defendant's repeated delay tactics.

Accordingly, the Court should deny Defendant's motion to stay.

**B.    The requested stay also fails to meet the *Landis* factors.**

SchoolAdvisor also claims that "every single factor analyzed by courts in this Circuit when considering a stay favors granting the requested relief." (Def. Mot. at 3.) Defendant's analysis of the *Landis* factors is seriously flawed—none of the factors favor a stay. Defendant's only "hardship" is the inevitable costs of responding to discovery, which only Plaintiff has incurred to date given Defendant's persistent evasiveness. On the other hand, a stay would unfairly prejudice Plaintiff's ability to obtain necessary evidence to support his claim, including evidence in the possession of third parties. As such, the *Landis* factors do not favor a stay.

In *Landis*, the Supreme Court acknowledged that courts have inherent power to control their own dockets, including the power to stay proceedings. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Any party seeking a stay, however,

6

"must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. Only in "rare circumstances" will a party be compelled to stand aside while a litigant in another case settles the rule of law that will define the rights of both. *Id.*

As Defendant correctly points out, the Ninth Circuit has distilled a three-factor test of competing interests to weigh when considering granting a stay under *Landis*: (1) the possible damage that may result from granting a stay; (2) the hardship or inequity that a party may suffer by going forward; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay," commonly referred to as judicial economy. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

As explained below, none of the factors support a stay here.

### 1. SchoolAdvisor's claimed "hardship" will occur regardless of whether the Court grants the motion to stay.

SchoolAdvisor begins by addressing the second *Landis* factor by asserting that if required to continue with discovery, it will "will expend enormous resources, including litigation fees, defending itself on an issue" that is "dispositive" of Plaintiff's claims. (Def. Mot. at 5.) In support, SchoolAdvisor asserts that it "bears a far heavier burden of resource expenditure in discovery than does Plaintiff" (*id.*) and that the "complaint does not allege any concrete facts to support its allegation that an ATDS was used" (*id.*). This is incorrect.

First, Plaintiff alleges that SchoolAdvisor sent the text messages using "a random or sequential number generator." (Dkt. 1 at ¶¶ 12, 41.) Thus, regardless of

7

which way the Supreme Court rules, discovery into the capacity of Defendant's dialing system will be necessary. *See Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 4698646, at *2 (W.D. Wash. Aug. 13, 2020) (denying a motion to stay explaining "regardless of *Duguid's* outcome, discovery will need to take place in this case regarding (1) the existence and exact nature of any ATDS used to contact Lacy. . ."); *Weisbein v. Allergan, Inc.*, No. SA CV 20-0801 FMO (ADSx), 2020 WL 6555051, at *2 (C.D. Cal. Nov. 6, 2020) (citing *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)) ("although the nature of discovery in this case may change in some ways based on the outcome of *Duguid*, the court is unconvinced the entire action should be stayed for that reason alone."). As such, SchoolAdvisor's request only seeks to delay inevitable discovery. And SchoolAdvisor will not suffer any hardship in proceeding, aside from the ordinary expenses associated with litigation, which are certain and insufficient to justify postponing this matter for an unspecified period of time. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'").

Nevertheless, as in its request to bifurcate, SchoolAdvisor again suggests that it bears a significantly "heavier burden" than Plaintiff in discovery. (Def. Mot. at 5.) But in reality, Plaintiff is the only party that has carried any of the discovery burden to date. Indeed, Plaintiff has responded to discovery Defendant's discovery requests and produced responsive documents. (Smith Decl. ¶ 5.) On the other hand, despite requesting and receiving additional time to respond to Plaintiff's first set of discovery requests (in accordance with a bi-furcated discovery schedule that it asked for, and received, over Plaintiff's objections), failed to produce any responses or produce any documents. (*Id.* ¶¶ 8-10.) Instead, SchoolAdvisor has

8

effectively granted itself a stay by submitting boilerplate objections and insisting that it isn't required to provide responses while its motion to stay is pending. (*Id.* ¶ 8.) Eventually, on December 22, 2020, the parties agreed that Defendant would supplement its discovery responses to provide substantive discovery responses by December 30, 2020. (*Id.* ¶ 11.) Nevertheless, the Court should not permit SchoolAdvisor to continue to delay its discovery obligations, which will remain regardless of how *Duguid* is decided.

Finally, SchoolAdvisor's assertion that staying the matter will "avoid engaging in a battle of the experts" regarding "unnecessary discovery" (Def. Mot. at 6) is quickly debunked by reviewing the current discovery schedule. That is, Plaintiff's expert disclosures are not due until June 11, 2021, and Defendant's expert disclosures are not due until July 9, 2021. (Dkt. 17.) Thus, Defendant will not even be required to disclose an expert until after the Supreme Court's current term ends.[2]

Because Defendant is unable to identify any harms beyond the inevitable costs of engaging in discovery, this factor tips decidedly in favor of denying Defendant's motion to stay.

### 2. Absent a stay, Plaintiff will be irreparably damaged in the form of lost evidence.

SchoolAdvisor next asserts that "Plaintiff will suffer no undue prejudice or tactical disadvantage from a stay of these proceedings" (Def. Mot. at 6), and that a stay "will nevertheless help him as much as it will Defendant" (*id.* at 7). In supposed support, SchoolAdvisor misleadingly claims that Plaintiff "chiefly seeks to recover statutory damages", and "any delay in seeking statutory damages, without more, does not constitute harm or damage to a plaintiff." (*Id.* at 6.) Further,

---

[2] https://www.supremecourt.gov/oral_arguments/2020TermCourtCalendar.pdf

1   SchoolAdvisor asserts that the case is "at an early stage of litigation, where

2   minimal discovery has taken place and only the instant motion is before the

3   Court." (*Id.*) Defendant's arguments are self-serving and ignore the serious risks of

4   prejudice to Plaintiff.

5          While a stay may not irreparably harm Plaintiff's claim for statutory

6   damages, it will harm his claim for injunctive relief. *See Lockyer v. Mirant Corp.*,

7   398 F.3d 1098, 1112 (9th Cir. 2005) (denying a motion to stay in part because "the

8   Attorney General seeks injunctive relief against ongoing and future harm."). Here,

9   in additional to seeking damages, Plaintiff seeks an injunction requiring

10  SchoolAdvisor to stop placing unsolicited text messages to consumers nationwide.

11  (Dkt. 1 ¶¶ 31, 38, 47, Prayer for Relief ¶¶ C-E.) Thus, every day that this case is

12  stayed or that Defendant is permitted to avoid its discovery obligations is a day

13  Defendant remains free to bombard class members with unsolicited text messages.

14         In addition to the harm associated with continued telemarketing, Plaintiff's

15  ability to pursue this action would be harmed by a stay. Generally, a delay that

16  results from a stay can harm plaintiffs because it threatens the availability of

17  evidence. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,

18  490 F.3d 718, 724 (9th Cir. 2007) (recognizing that "[d]elay inherently increases

19  the risk that witnesses' memories will fade and evidence will become stale"). This

20  risk is exacerbated "when important documents are under the control of third

21  parties, as these entities might not be obligated to preserve that evidence." *LG*

22  *Elecs., Inc. v. Eastman Kodak Co.*, No. 09-CV-0344H(BLM), 2009 WL 1468703,

23  at *2 (S.D. Cal. May 26, 2009).

24         In this case, if Plaintiff is unable to engage in discovery to secure evidence

25  in the possession Defendant and various other third parties until a decision in

26  *Duguid* is issued, Plaintiff may lose the ability to the evidence to support his

27                                   10

28

claims. This prejudice is exacerbated by the fact that such evidence is likely in the possession of third parties, which SchoolAdvisor has yet to identify. That is, in its initial disclosures, SchoolAdvisor has identified "Conceptual Media" as the entity from which it procured Plaintiff's lead information. (Smith Decl. ¶ 3.) However, SchoolAdvisor has not identified Conceptual Media's legal name, and Plaintiff cannot serve a subpoena until it does. (*Id.* ¶¶ 3, 10.) More problematic, SchoolAdvisor's motion appears to tacitly admit that it has not even identified, let alone served document preservation notices on, third parties that are in possession of evidence. (*See* Def. Mot. at 2 ("yet-to-be identified non-parties to this suit will all benefit from awaiting ultimate guidance from SCOTUS.").) Given that we are already more than five (5) months into discovery,[3] this poses serious preservation risks.

In short, Plaintiff will be prejudiced if the case is stayed because he would be unable to discovery evidence material to his claims, including evidence in the possession of third parties, for the duration of the stay, during which time Defendant could continue its unlawful practices unabated. As such, the first *Landis* factor weighs against granting the requested stay.

### 3.    A stay would not promote judicial economy.

The final factor, judicial economy, would not be served by a stay. Judicial economy may be served where a stay may allow for the development of a potentially dispositive issue. *See Goro v. Flowers Foods, Inc.*, No. 17-CV-2580

---

[3] It should be noted that any assertion by SchoolAdvisor that discovery is still in its early stages is unavailing. Discovery should have by now proceeded to the second phase, which addresses class certification—the process only remains stuck because Defendant has refused to respond to discovery while its motion to stay is pending. No litigant should be permitted to have its cake and eat it too as SchoolAdvisor attempts to do.

11

JLS (JLB), 2020 WL 804841, at *4 (S.D. Cal. Feb. 18, 2020). SchoolAdvisor claims that judicial economy be served because "the impact of *Facebook* on this litigation may be dispositive of the whole matter." (Def. Mot. at 8.) Yet, Defendant provides no real support for this claim. As explained above, *Duguid* will not dispose of Plaintiff's ATDS claim. Plaintiff's ATDS allegations conform to the strict interpretation of the statutory definition. (Dkt. 1 ¶¶ 12, 42-43.) Thus, even if the Supreme Court holds that a number generator is necessary for a dialing system to qualify as an ATDS, Plaintiff's claim would remain, and the parties will still need to conduct discovery to ascertain the particular capacity of the dialing system used to place texts to Plaintiff and the Class. And where a decision is not dispositive, a stay is inappropriate. *See Henderson v. United Student Aid Funds, Inc.*, No. 13-CV-1845, 2016 WL 5956041 (S.D. Cal. May 3, 2016) (denying a motion to stay where the looming decision in "*Spokeo* probably will not be dispositive on Plaintiff's claims").

In denying a similar request in another TCPA case, the District of Arizona reasoned that "regardless of the results in *Facebook* [*v. Duguid*]…[the defendant] will be required to engage in discovery." *Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020) (attached hereto as Exhibit B). "[O]nce the Supreme Court releases its decision defining ATDS, Plaintiff still would be entitled to conduct discovery into Defendant's systems to determine whether those systems met the ATDS definition. In fact, Defendant has not pointed to a single discovery issue that would be eliminated by a *Facebook* decision favorable to it . . . ." (Ex. B at 2.) The *Whittaker* court denied the motion to stay because "discovery issues are not likely to be mooted and resources are not likely to be spared" by awaiting *Facebook's* outcome to begin discovery that is necessary regardless. *Id.*

12

The same holds true here. SchoolAdvisor cannot credibly suggest that the *Duguid* decision will moot any discovery issues or be dispositive of his claims. Regardless of the outcome in *Duguid*, the parties will still need to conduct discovery targeted at the capacity of Defendant's dialing system. This is not one of the "rare" instances where a party should be made to stand aside while a pertinent rule of law is decided. *Landis*, 299 U.S at 255. Judicial economy would not be served by postponing this case for an unspecified period of time, based only on Defendant's misguided belief that a Supreme Court decision would drastically alter Plaintiff's cause of action. Further, given that Plaintiff would likely suffer harm in the form of evidence becoming unavailable if such a stay is granted, and that SchoolAdvisor will not suffer any harm beside the inevitable cost of litigation, the requested stay is inappropriate.

In short, staying proceedings pending *Facebook* will not serve judicial economy. Instead, it will only result in the postponement of discovery until a later date. Defendant's request to stay this matter should be denied.

### 4.   Defendant's request to stay falls in line with the trend in TCPA litigation.

SchoolAdvisor closes its motion by urging the Court to follow "the path of other courts across the country and issue a stay to allow for SCOTUS to bring much needed clarity to the ATDS issue". (Def. Mot. at 9.) This isn't accurate. The *Duguid* decision, like so many supposedly "pivotal" TCPA decisions before it, is unlikely to provide the clarity Defendant foretells.

Indeed, prior to July 2020, TCPA defendants routinely requested stays pending the Supreme Court's decision in *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631, 140 S. Ct. 2335 (July 6, 2020) ("*AAPC*"). *See A.M. by & through Deora v. Bridgecrest Acceptance Corp.*, No. 4:20-CV-00553-SEP,

13

2020 WL 3489280 (E.D. Mo. June 26, 2020); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020); *Mehaffey v. Navient Sols., LLC*, No. 19-CV-00197-REB-NRN, 2020 WL 5260209 (D. Colo. Feb. 13, 2020). In all of these cases the respective defendants argued the *AAPC* decision would bring much needed clarity.

Prior to *AAPC*, defendants sought stays pending the Federal Trade Commission's ("FTC") 2015 TCPA Order—claiming that it would settle the issue of what constitutes an ATDS. *See Gusman v. Comcast Corp.*, No. 13CV1049-GPC DHB, 2014 WL 2115472 (S.D. Cal. May 21, 2014); *Kristensen v. Credit One Bank, N.C.*, No. CV14-7963 DMG AJWX, 2015 WL 2151751 (C.D. Cal. May 7, 2015). After the issuance of the FTC's 2015 Order, defendants sought stays while the 2015 Order was appealed to the D.C. Circuit. (again claiming that the issue would be resolved once and for all). *See, e.g.*, *Knapper v. Cox Commc'ns, Inc.*, No. CV-17-00913-PHX-SPL, 2019 WL 250430 (D. Ariz. Jan. 17, 2019); *Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2018 WL 6459964 (E.D. Cal. Dec. 10, 2018); *Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWX), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015). Even after the D.C. Circuit ruled, defendants began seeking stays pending a new order from the FTC. *See*, *e.g.*, *Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM), 2019 WL 4382204, at *8 (S.D.N.Y. Aug. 19, 2019); *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1068 (D. Nev. 2019).

Hence, TCPA defendants routinely request stays on the purported grounds that a new major decision will miraculously absolve them of their liability for having made repeated robocalls without consent. After *Duguid* there will be others.

And this instance is no different. SchoolAdvisor predictably asks this Court to stay the case by claiming that *Duguid* will "provide definitive clarification on

14

what equipment satisfies the definition" or an ATDS. (Def. Mot. at 9.) Despite its hope that *Duguid* will dispose of the instant case, SchoolAdvisor cannot credibly suggest that it knows how the Supreme Court will rule. Instead, this Court should find, in line with many other courts, that a stay pending a decision in *Duguid* is inappropriate where discovery will be required regardless. *See Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020); *Camacho v. Hydroponics, Inc.*, No. EDCV20980JGBKKX, 2020 WL 6784519, at *5 (C.D. Cal. Sept. 22, 2020) (denying a motion to stay pending the outcome of *Facebook*); *Smith v. JPMorgan Chase Bank, N.A.*, No. 20CV01777CBMPJWX, 2020 WL 5033532, at *2 (C.D. Cal. Aug. 21, 2020) ("Although the decision in Duguid may simplify issues and questions of law, to grant the stay at this stage of the proceedings is premature."); *Weisbein v. Allergan, Inc.*, No. SACV200801FMOADSX, 2020 WL 6555051, at *2 (C.D. Cal. Nov. 6, 2020); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 4698646, at *2 (W.D. Wash. Aug. 13, 2020) (denying to stay the case pending *Facebook* explaining "regardless of Duguid's outcome, discovery will need to take place in this case regarding (1) the existence and exact nature of any ATDS used to contact Lacy. . ."); *Pittenger v. First Nat'l Bank of Omaha*, No. 20-CV-10606, 2020 WL 5596162, at *3 (E.D. Mich. Sept. 18, 2020) (denying a motion to stay pending the *Facebook* decision).

In short, the Court should reject SchoolAdvisor's attempt to seize upon this most recent case to reach the Supreme Court as a basis for granting a stay—to hear TCPA defendants tell it, there's always another forthcoming decision that will prove dispositive.

## IV.    CONCLUSION

The Court should deny Defendant's motion to stay. The Supreme Court's

15

upcoming review of the ATDS definition in *Facebook* will not dispose of Plaintiff's claim, and the *Landis* factors do not support staying inevitable discovery and proceedings. Accordingly, the Court should deny the motion, permit the parties to proceed with discovery, and award any such relief as it deems necessary and just.

Dated: December 23, 2020            By:  /s/ Taylor T. Smith

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the alleged Class*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system.

Date: December 23, 2020                    /s/ Taylor T. Smith

17